IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2025

**STATE OF TENNESSEE v. TERESA SHINPAUGH**

**Appeal from the Criminal Court for Knox County**
**No. 124794  G. Scott Green, Judge**

_____

**No. E2025-00300-CCA-R3-CD**
_____

In 2023, the Defendant, Teresa Shinpaugh, pleaded guilty to one count of criminally negligent homicide and one count of aggravated neglect of an elderly or vulnerable adult, in exchange for the dismissal of the remaining counts of her indictment and pursuant to the agreement that the trial court would determine the length and manner of service of her sentence.  After a hearing, the trial court sentenced the Defendant to concurrent sentences of two and eight years with one year to serve in confinement and the remainder to be served on probation.  On appeal, the Defendant asserts that the trial court erred when it sentenced her to one year of confinement.  After a review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and MATTHEW J. WILSON, JJ., joined.

Mary Ward (at sentencing and on appeal) and Daniel Bell (at sentencing), Knoxville, Tennessee, for the appellant, Teresa Shinpaugh.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Charme P. Allen, District Attorney General; and Tammy H. Hicks, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from the death of the elderly victim, Brenda Crutchfield.  The Defendant and three co-defendants, one of whom was the Defendant's sister-in-law, were entrusted with the physical care of the victim who, while in the Defendant's care, "die[d]

in her own feces." On May 18, 2023, a Knox County Grand Jury indicted the Defendant for two counts of first-degree murder, four counts of aggravated neglect of an elderly or vulnerable adult, and one count of tampering with the evidence.

## A. Guilty Plea

The record does not contain the guilty plea hearing transcript, and thus we must deduce the facts that served as the basis of the Defendant's plea from the statements made at sentencing and in the parties' briefs, which are summarized as follows: The victim, who was bedridden, offered the Defendant and her husband the job of caring for her daily needs in exchange for them living in her home rent free. At some point, the Defendant and her husband ceased caring for the victim and abandoned her in the basement of her home with one of their relatives, Randy Shinpaugh, who was very ill and unable to care for the victim. The Defendant and her husband found the victim in the basement, starved to death and covered in her urine and feces. The victim's body had mummified. The Defendant and her husband cleaned the victim's body, the bed, and the basement and then called the police. The medical examiner ruled that the victim's cause of death was starvation, noting her malnourishment and dehydration. The medical examiner determined that the victim's time of death had been three days prior to the Defendant's call to the police.

On this basis, the Defendant pleaded guilty to one count of the lesser-included offense of criminally negligent homicide and one count of aggravated neglect of an elderly or vulnerable adult. In exchange for her guilty plea, the State dismissed the remaining counts. The agreement entailed that the trial court would determine the length and manner of service of the sentence.

## B. Sentencing

The Defendant requested a sentence alternative to confinement. At the sentencing hearing, a Knox County Sheriff's Deputy testified that elder abuse was on the rise and being reported to law enforcement more frequently. The Defendant's presentence report was admitted as evidence into the record. No other evidence was presented. At the conclusion of the hearing, the trial court made the following statements:

> I'm looking at [the Defendant's] presentence investigation reports that each state that [the Defendant does not have] any criminal history at all. Never even a speeding ticket. [The Defendant is] rated low risk for probation. But the facts of this case just bother me. I don't know how else to say it. It's just troubling and strikes me at the very core of my being that [the Defendant] made the agreement with [the victim] that in exchange for getting free room and board you were going to take care of her. And then she was allowed to die in her own feces under that very same roof. And it [] bothers me to my very core.

2

. . . .

I find the facts of this case to be shocking and reprehensible.

At the conclusion of the hearing, sentencing the Defendant as a Range I, Standard offender, for the aggravated neglect of an elderly or vulnerable adult resulting in serious bodily injury conviction (Count 4), a Class B felony, the trial court imposed a sentence of eight years with one year of incarceration and the remainder of the term suspended to probation. For the criminally negligent homicide conviction (Count 1), a Class E felony, the trial court imposed a concurrent sentence of two years on probation.

It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court erred when it imposed a sentence of split confinement with one year of incarceration. The State responds that the Defendant has waived this issue because she failed to provide an adequate record for this court to review.

## A. Waiver

The standard of review for within-range sentences accompanied by questions related to probation or other alternative sentences is for an abuse of discretion, accompanied by a presumption of reasonableness. *State v. Caudle,* 388 S.W.3d 273, 278-79 (Tenn. 2012). In the instance of a guilty plea where the manner of service or length of a sentence is challenged by a defendant who fails to include a transcript of the guilty plea hearing, as is the case here, this court is instructed to, rather than automatically waive the issue, "determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*" (an abuse of discretion standard with a presumption of reasonableness when the record establishes that the trial court imposed a sentence that is within the appropriate range and that reflects a proper application of the purposes and principles of sentencing). *Id.* (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012)). We note that it is the duty of an appellant to prepare a record as necessary to convey the issues on appeal. Tenn. R. App. P. 24(b) ("the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). Finally, an order of supplementation may be an appropriate remedy for any deficiencies in the record. *Caudle*, 388 S.W.3d at 279-80.

If the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would

support the ruling of the trial court. *Id.* (citing *State v. Oody,* 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). "In any event, the mere fact that the transcript of the submission hearing was not made a part of the record on appeal should not preclude review under the standard adopted in *Bise.*" *Id.*

The Defendant has failed to include a transcript of the guilty plea hearing in this case. The State maintains that this constitutes waiver; however, as instructed by our supreme court in *Caudle* to approach waiver on a case by case basis, we conclude, as the court did in *Caudle*, that the pre-sentence report, the transcript of the sentencing hearing, and the exhibits in the record are adequate to conduct a meaningful appellate review. *Id.* at 279.

## B. Alternative Sentencing

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *Id*. at 278-79. The defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2018). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b) (2018); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

Regarding alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances ... including a defendant's background." *Ashby*, 823 S.W.2d at 168 (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2018). "When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Cathey*, No. E2015-01284-CCA-R3-CD, 2016 WL 2641766, at *3 (Tenn. Crim. App., May 6, 2016) (citations omitted). The court should also consider the defendant's truthfulness. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

In this case, the trial court granted, in part, the Defendant's request for an alternative sentence, but ordered the Defendant to serve a portion of her sentence in confinement. The trial court did this based on the facts surrounding the case, namely that the Defendant entered into a financial agreement for care with the victim and had allowed her to die in such a manner. The trial court placed great weight on the circumstances of the victim's death and the way the Defendant acted after the victim was deceased. Based on these multiple factors, and in light of its consideration of the required factors when determining the need for confinement, we conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve one year of her eight-year sentence in incarceration. The Defendant is not entitled to relief as to this issue.

In ordering the Defendant to serve one year of her eight-year sentence in confinement, the trial court noted the shocking circumstances of the victim's death. The trial court was particularly concerned that the victim had made financial arrangements to be cared for and instead was left to die by the Defendant.

The Defendant acknowledged in her statement to the trial court at the sentencing hearing that she had been employed to care for the victim. The Defendant admitted that, when present at the victim's home prior to her death, she did not go "down there" to the basement to check on the victim. The Defendant acknowledged that she was in the room when the victim was cleaned up before the police were contacted about the victim's death. The Defendant stated that she was aware that the police were not immediately contacted after the victim's death. We conclude that the circumstances of the abuse suffered by the victim were egregious and vile, showing little regard for human life. The conduct of the Defendant and her relatives, in all likelihood, cost the victim her life. The trial court considered the evidence and the purposes and principles of sentencing before ordering the Defendant to serve one year of her eight-year sentence in confinement. The Defendant has, therefore, failed to establish either an abuse of discretion or otherwise overcome the presumption of reasonableness afforded sentences which reflect a proper application of the purposes and principles of our statutory scheme.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_s/ *Robert W. Wedemeyer*_____
ROBERT W. WEDEMEYER, JUDGE

6